Richardson, J.,
dissenting. Two questions are before the Court:
1. Is the sixth enacting clause of the tax Act of 1839, within the authority of the State Legislature to lay taxes ?
2. Is the tax prospective or retrospective, in its operation ?
This Court docs not undertake to decide whether the proposed tax be wise, or just, or onerous, but whether it is within the constitutional delegation of the legislative power.
Were wc to trace the consequences of such a tax, we might perhaps, hud it calculated to retard the influx of capital, if not causing its efflux from the State, and, therefore unwise. It may be a high tax, and un-looked for, and, therefore, both unjust and oppressive.
But such considerations, although apt to affect the mind and bias the judgment, are for the Legislature alone.
The office of the Court is to go to the source of the Act, in order to discover whether the enactment of such a tax comes within the proper legislative authority, or does it constitute a penalty, to attach only after a verdict of guilty of selling “ bullion, specie, &c. ” against the form of the Act, &c. It is either a tax or a penalty ; and to decide which, we are to turn to the constitution of the State.
“ The legislative authority of this State shall be vested in a general Assembly.” (Art. 1.) And we need not labor to prove that laying taxes is within the legislative authority.
But, oil the other hand, among the restrictions upon so comprehensive an investment of legislative power, is the following ; “No freeman of this State shall be taken, or imprisoned,” &c., “ or deprived of his life, liberty, or property, but by the judgment of his peers, or by the law of the land.” (Art. 9, sec. 2.) This is the article that suggests so often the ex*pressive figure, the JEgis of the constitution. Here, too, it is admitted that, under this wise, protective provision, if the alleged tax shall amount to a penalty, for some infraction of the laws, the tax collector cannot, by his authority, assess the penalty under the name of a *274 tax; for if a penalty, a jury must decide upon the supposed infraction before the penalty can be inflicted.
Does, or does not, then, the alleged tax amount to a penalty ? What is a tax ?
It is a contribution, in money, required by law of every citizen, for his property, income, or person, or for the use of any personal or other rights, which are protected by the government of his country. — I have somewhere read that in Great Britain every thing except water is taxed, in some shape ; and the observation is characteristic of the power of taxing whatever is used or enjoyed.
For instance — in that country, the use of light and air is paid for, in the window tax — that of fire, was formerly in the hearth tax — contracts and the use of paper, in the stamp act. Talents, industry, and learning, in the tax on professions. The light of calling debtors to account, in the tax on law proceedings. The boasted “ Nulli vendemus jusiiciam” of Magna Charta, has not shielded judicial justice from taxation, and the established religion brings with it, “ great tithes to the rector, and small tithes to the vicar.” All property is taxed, down to dogs. Life is assessed in the poll tax, and the right to be buried is taxed, in the shroud required by law.
I have made this selection of taxes from high authority, in order to show how universal is the application of the taxing power, to any subject, or right, thing or action. (And if I may be indulged in the incidental reflection — may the two hundred millions of dollars now due by the individual States, and the passion for borrowing abroad, not bring them into this favorite high road of our English ancestors ; or at least, not without their secret of spending, at home, the whole proceeds of the one, and keeping there the entire interest of the other, which so lightens the burden of heavy taxes.
But to proceed — when we consider that the foundation, principle and inseparable duty of government, is to protect persons, rights and property, it is but strict reciprocity, that the commensurate right of taxing follows on the part of the ^government, for its own safety, per-menance and policy. And, that there can bo no limitation, but by some fundamental and paramount law, or the change of rulers. It is important in the consideration of the case before the Court, to call to mind the time, manner and true end of taxes.
Taxes are generally laid annually, because they are laid for the purpose of raising the supplies for and during the established fiscal year. They are usually upon things or rights, which have been already used or enjoyed ; because they have been already protected, and because the value of such things or rights can then be most safely estimated and justly rated. As to the manner — it may be tyrannical to surprise the citizen by unlocked for taxes. But the timely notice of what shall be taxed, can be seldom given, because every successive Legislature must estimate the supplies for the coming year — while they judge by the actual history of the past year, what property or revenue, right or enjoyment, can most easily and justly bear this burden of taxes.
As to the character and end of taxes. Why is it, that we cannot divest taxation of the idea of a loan, advancement, or subsidy. It is because they all depend upon the actual means. Rents, profits and *275 wages are the sources of the supplies, under any name. And rightly considered, all such supplies are to come back to the people, in some right, profit or enjoyment. Yet still, they are no more than a choice of burdens, and admit of great abuse.
But, all that can be done, is to consult the actual means of the country, in order to indicate the justice of all taxes. And we see, at a glance, the sagacity of the Legislature which, by wise laws, draws into its own State pecuniary means, making, in this way, the wealth of foreign nations tributary to the welfare of their own. And how unwise to occasion the efflux of capital or interest — transferring to others the industry of their country. And here, at least, for the argument sake, let the brokers’ tax be considered of this character.
The principles noticed are self-evident, and exhibit their own reason. And the following rule is evidently deduced from them. It is considered (see 1 Comm. c. 8,) as a rule of construction of revenue acts, in ambiguous cases, to lean in favor of revenue. This rule, says the great commentator, will be found to be agreeable to good policy and the public interest.* But it is still more clear, as our own rule, that the Court is to hold all Act of the Legislature constitutional, unless clearly repugnant to the paramount law of the constitution.
Now, then, let us apply these well established rules, and such principles, in the construction of the tax Act of 1839. After several other taxes, the Act proceeds in these words, “thirty cents, ad valorem, on every hundred dollars, on the value of all lots, lands, and buildings, within any city, including all lots or portions of land on which buildings may be erected, in the immediate vicinity of any city, &c. Sixty cents per hundred dollars on factorage employments, &c. ; and on the amount of commissions received by vendue-masters, and commission merchants, &c., one-eighth of one percent, upon all purchases and sales of bullion, specie, bank notes, bills of exchange and stocks, which may be made by any brokers or agents in this State, for or on account of any bank, company, or individual, without the State ; and also upon all such purchases and sales as may be made by any such broker or agent, upon his own account, or for account of others engaged in the same pursuits; to bo ascertained and rated by the assessors and collectors throughout the State, according to the best of their knowledge and information,” &c.
It is supposed that the tax of one-eighth of one per cent, upon “ bullion, specie,” &c., may be unconstitutional. But such sales are the ways and means of profit and wages to the broker; and, being protected, are subjects for taxation, like the sales of auctioneers or factors. And the tax is as well rated or measured by the amount of sales, as by the commissions of the broker. They are the same measure essentially.
It is argued that it amounts to a double tax. But that would only-make it a high tax — not render it unconstitutional. All absentees pay a double tax; upon the wise rule, that we should discourage the efflux of money. And assuredly, a double or high tax may be laid for other causes. Any man may act as factor, broker and auctioneer, and render return for each employment respectively. Rich men make returns for various property. And he that carries on many professions must do the same; and ought not to complain, if all his ways and means are made to *276 contribute. In answer to this part of the argument, it ought to be enou£h to say, that the *sales of “bullion, specie,’’ <fcc., being taxable, the salesman must pay the tax laid according to law.
But the great and true objection is, that this tax amounts to a penalty. If it be so, the relator is shielded by the ninth article of the constitution, already recited. But why is this tax more a penalty than the common tax upon auctioneers, factors or commission merchants ? This is not a pecuniary fine for doing an unlawful act, but a contribution for being protected in making profit and wages — and of selling “ bullion, specie,” &c. It is, surely, one of the lawful ways and means of profit. For my own part, I do wish that we had here, in our commercial capital, the sales of all bullion, specie, bank notes, bills of exchange, and stocks, sold in the United States. Such a mart would do more for our foreign exchanges, perhaps more for our commercial advancement, than the great Western Railroad completed to the Ohio, and the direct trade with Europe, both of which are so justly desired ; and my only objection to the tax is, that it may check the influx of such rich ways and means. What would the Lord Mayor and Common Council of London think, if the sales of American and other foreign stocks were checked by a high excise duty.
I trust that, in these incidental observations, it will be seen that the fairest play is given to the argument against the tax. I defend its constitutionality only.
Under the head of penalty, the case of the State vs. Allen, (2 McC. 55) is relied upon ; and the argument is, that courts should be uniform in their decisions upon similar cases. This is most true. Therefore, let us consider that adjudication. In the mean time, I cannot but anticipate that the argument, from uniformity will presently change sides.
The tax Act of 1820 imposed, in terms, a tax of §10,000 upon any person “ who shall, after the passing of this Act, open, or keep open, any office for the sale of any lottery tickets.” The so-called tax was not measured, or rated, by the sales, profits, or success of the lottery office. It was the plain infliction of a specific fine, for opening, in future, such a source of excitement to gambling propensities as a lottery office. Whether the office sold a single ticket or many thousand, the fine was the same- Of course, there was nothing *for the tax-collector to assess. The supposed tax bore, then, every mark of penalty or punishment for an act done, or at least, for a privilege assumed ; and it followed, that the party accused, must be first convicted by a jury, upon which the fine followed, subject to the pardoning power of the Governor.
The ninth section of our present tax Act illustrates the principles of Allen’s case. Any person may now purchase the privilege of vending lottery tickets for $2000, but on default, he is subject to the same fine of §10,000 ; so that it was, and is,- a penal enactment. But the tax before the court, has no characteristic of the kind. But suppose that doubtful, are we not, then, to apply the rules before laid down ? The construction is to be favorable for raising the supplies of the State ; and no Act is to be held unconstitutional, unless it be clearly at war with the constitution of the State.
Of this last rule, I beg to be indulged in a brief exposition, for its mportance sake, on both sides of the present case ; and especially because late I do think that motions for prohibitions are getting somewhat *277 rife. And it may be better to resist their undue encroachments, than to have to cure their evils.
The constitution, and all statutes passed, are simply laws intended to be made, “ in pari materia” — upon the same subject. Every Act applies and illustrates some authority of the constitution, by practical example and enforcement. It follows, that the secondary law of the Act, to be good and valid, must be inseparable from the primary principles of the constitution, which is, at once, its source and its warrant. Hence, it is, that we are to apply the principles of the one, in order to test the validity of the other. And hence, too, the unavoidable judicial duty, not privilege, so to apply the constitutional test, as to declare the supposed law of the Act, valid or void, as it may be found united with, or repugnant to, the law of the constitution. It equally follows, that where there is any union between the law and the constitution, the Act is within the Legislative authority. And being truly in pari materia, it must stand.
If I may use a figure of speech — wherever the parent law of the constitution tolerates the Act as its offspring, it is legitimate, *however deformed in our eyes. And, of course, he that would repudiate an Act, takes the burden of proving its repugnancy upon his own shoulders.
To this exposition, let me add, that a revenue Act is among the last of all laws in which Courts should be placed in conflict with the Legislative department. Because the subject and extent of taxes are necessarily at the Legislative discretion, and Courts cannot interfere with the discretion, so vested in another department of government.
Having now established, that the broker’s tax is no penalty, but plainly a tax, within the legislative authority to tax ; and I would apologize for exhausting time upon so plain a proposition, did I not feel, that a thorough conviction on that head of the argument, is the proper and unerring clue to the true exposition of the second and final proposition ; I do -not speak beyond my conviction, in saying — grant the first, yon give the second ; and that the prohibition ordered, can be supported, only by upholding the entire decision of the Circuit Judge. And I now, therefore, lay down the proposition, so established, as decisive of the second question of the case.
Doubtful words are expounded by their subject matter. If, then, the new tax upon brokers be itself constitutional, it is, then, to be assessed and paid, unless otherwise plainly expressed, like other and former taxes —i. e. under the Act of 1788, for expounding all our annual tax Acts. And all that I have said, upon the union between Acts and the constitution, would apply equally to the Acts of 1839 and 1788 — we cannot uncouple them. And I might, here, well ask more than I demand— that unless the Act of 1839 be expressly future and prospective, as to the tax, it is ipso facto retroactive, and enacts a tax for the past fiscal year. And, I here admit, that if the tax on brokers were plainly prospective, it would then have one mark of a penal enactment, and militate against my first proposition.
But let us turn untrammelled to the terms of the Act — “ one eighth of one per cent, upon all purchases, sales,” &c., which may be made, by any brokers or agents.
*278 Do these words mean “sales which may have been made,” so as to relate back to the past fiscal year, or do they mean such sales as shall be made, after passing the Act of 1839 ? and *thus give no authority for the assessment made, of the 1st of October, preceding.
First — The former is, in mv judgment, the true grammatical construction ; “ sales which may be made,” mean — which may have been made, rather than sales which shall be made. I would say this, independent of the Act of 1788. Because,
Secondly — It is the only construction that can make the words answer to the apparent, if not professed, object of the Act to raise supplies, in the usual way, by rates or taxes, upon things, rights, and profits, already protected and realized.
Thirdly- — It is the only construction that can couple the Act for raising the brokers’ tax with the Act of 1788, which has usually formed the exponent of all our tax Acts, and made the taxes laid relate back to the first of October preceding. And,
Fourthly — The words used constitute the common phraseology of our tax Acts, in similar cases, and have been before construed in practice, to make the assessment relate back to the first of October.
For instance, take the fourth tax laid by the very Act of 1839. “ Thirty cents ad valorem,” &c., “on lots,” &c., “ on which buildings may he erected.” No one has questioned the retrospective meaning of these words, and the established construction is, that the tax is laid on buildings erected before the first of October last past.” Does not the use of words make the law of their construction ? How, then, I ask, can it be, that “sales,” &c., “ which can be made,” mean sales that shall be made after passing the Act ? Will the Court, by a new construction'of such words, put it at the discretion of every householder in a town or village, to avoid the present tax upon his building, by submitting, that the tax is only on buildings that shall be erected, and thus make the exception introduced by the Act itself, in Allen’s case, the common rule for the tax collector, in all his assessments of houses, “ which may be erected ?’■’ Will the Court instruct him to read the sentence as if written — shall be erected ? What a practical illustration would we have that revenue laws are to be construed favorably for the State revenue ! And what would become of the argument for uniformity ?
But, if we want additional reason for the usual construction of the words, “maybe erected,” or “may be made” — have we not what is wanted, in the principle, that taxes are commonly* laid, and ought to be laid, upon rights that have been already enjoyed, under the protection of government ? If this be a sound principle for raising revenue by taxation, does it not lead us, as by the hand, to the retrospective operation of the words, “sales which may be made.”
Upon the whole, then, in this case, so important in its principles— disabusing my understanding of the excitement caused by a new and high, and, perhaps, unwise tax, and releasing it from authority, I can perceive no penalty, and nothing repugnant to the constitution, in the tax laid on brokers. Nor can I discover that it differs from other similar taxes, in the time of its assessment. And the conclusion follows, that the decision granting the prohibition, should be reversed; and that the relator be required to declare in prohibition, in order to try the fact whether he *279 was a broker, within the meaning of the Act. This he denies ; and he must be heard upon the question of fact. For, in this, Mr. Carter is under the 9th article of the constitution. And the tax will attach, or not, according to the verdict that shall be rendered, upon the question, is he, or not, a broker or agent, within the meaning of the Act.
See City Council ads. Weston, Harp. 340; reversed 2 Pat. 449, or 8 Curt. 171; Birney vs. Tax Collector, 2 Bail. 654; Bulow vs. City Council, 1 N. & McC. 527; Copes vs. City Council, 10 Rich. 495, and cases there cited; State Bank vs. City Council, 3 Rich. 342; State ex. rel., Ravenal et al. vs. City Council, 4 Rich. 286; State ex rel., Sebrinq et al. vs. City Council, 5 Rich. 561; State ex rel. Adger vs. City Council, 2 Sp. 719; 4 Strob. 217; McMul. Eq. 144; 2 Sp. 491, 623; 10 Rich. 104, 240, 474. An.
Johnston, Ch., signed neither opinion.